**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 11 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STILLWATER LTD, a United Kingdom Company,<br><br>    Plaintiff-counter-claim-defendant-Appellant,<br><br>v.<br><br>ANTONIA BASILOTTA,<br><br>    Defendant-counter-claimant-Appellee. | No.   21-55241<br><br>D.C. No. 2:16-cv-01895-SK<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Steve Kim, Magistrate Judge, Presiding

Submitted May 9, 2022[**]
Pasadena, California

Before: WATFORD and FRIEDLAND, Circuit Judges, and ROBRENO,[***] District Judge.

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

    [***]    The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Stillwater filed an action against Antonia Basilotta, a singer and performer whose stage name is "Toni Basil," seeking a declaratory judgment about Basilotta's ownership of copyrights in certain sound records.  Stillwater argued that the recordings are "joint work" under the Copyright Act because Mathieson, a producer, was a coauthor alongside Basilotta and thus that Basilotta's share of the copyrights in the recordings should be limited.  The district court held a bench trial and concluded that Stillwater had not proved by a preponderance of the evidence that the recordings constituted "joint work."  We affirm.

Under the Copyright Act, a "'joint work' is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101.  An "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection."  *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989).  In *Aalmuhammed v. Lee*, 202 F.3d 1227 (9th Cir. 2000), we set forth three factors for determining whether a work is jointly authored.  "First, an author 'superintend[s]' the work by exercising control."  *Id.* at 1234 (quoting *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 61 (1884)).  "Second, putative coauthors make objective manifestations of a shared intent to be coauthors . . . ."  *Id.*  And "[t]hird, the audience appeal of the work turns on both contributions and 'the share of each in its success cannot be

appraised.'" *Id.* (quoting *Edward B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir.), *modified by* 140 F.2d 268 (2d Cir. 1944)).

Stillwater has not proved joint authorship by a preponderance of the evidence.[1] As to the first factor, Stillwater has produced little evidence that Mathieson exercised control. A person exercising control is "likely [to] be a person 'who has actually formed the [work] by putting the persons in position, and arranging the place where the people are to be—the man who is the effective cause of that,' or 'the inventive or master mind' who 'creates, or gives effect to the idea.'" *Id.* (quoting *Burrow-Giles*, 111 U.S. at 61). As to Mathieson's role in producing the recordings, the head of the recording company that hired Mathieson asserted that Mathieson "carr[ied] out the duties of a record producer" in "an extremely professional" manner that resulted in "very good" work—in other words, he was "a first-class record producer." According to that witness:

> Mathieson's job was to: (a) arrange and schedule meetings and recording sessions . . . (b) ensure that musicians and vocalists appeared as required; (c) obtain the best possible performances from the vocalist and musicians; (d) provide creative input . . . and (e) ensure that the sound recordings were technically satisfactory

---

[1] The parties dispute the proper standard of review for the district court's conclusions stemming from mixed questions of law and fact. Stillwater argues that our review should be de novo, while Basilotta argues that our review should be for clear error. We need not decide that question because Stillwater's appeal fails even under a de novo standard of review.

and commercially suitable.

Mathieson also mixed the master recordings. That witness further testified that his knowledge came from him or his assistant "attend[ing] some of the [recording] sessions" in person. Mathieson did not testify at trial or supply any written testimony.

This vague description of Mathieson's role as a producer, from someone who only occasionally witnessed Mathieson performing that role, is inadequate to prove that Mathieson was a creative mastermind behind the recordings rather than someone who was, for instance, mixing the tapes largely at Basilotta's direction consistent with her creative vision. Meanwhile, there is strong evidence that artistic control lay primarily with Basilotta and not with the recording company or—by extension—Mathieson. For example, the company struck draft language from its first contract with Basilotta that would have given it control over whether a recording met a "satisfactory . . . artistic standard." That change was maintained in future contracts, which allowed the company only final approval to ensure that recordings were "technically satisfactory and suitable in all respects for commercial exploitation." Furthermore, Basilotta appears to have primarily wielded creative control, selecting songs and instrumental musicians, devising the creative concepts for recordings, and even helping Mathieson mix the master tapes. *Cf. id.* at 1233 (explaining that an author is someone "to whom the work owes its

origin and who superintended the whole work, the 'master mind' . . . someone who has artistic control").[2]

As to "objective manifestations of a shared intent to be coauthors," Stillwater's evidence is scanter. *Id.* at 1234. "The best objective manifestation of a shared intent, of course, is a contract saying that the parties intend to be or not to be co-authors," but "[i]n the absence of [such] a contract, the inquiry must of necessity focus on the facts." *Id.* at 1235. Stillwater's only meaningful argument is that the agreements Mathieson signed with the recording company are objective manifestations that Mathieson would be a coauthor. Those agreements provide that any copyright interests to which Mathieson might be entitled were to be transferred to the company and that he was to be paid royalties based on the recordings' sales—an arrangement similar to the one Basilotta had with the

---

[2] Stillwater also emphasizes that the recording company, which assigned its interest in the recordings to Stillwater, "financed and paid for the [recordings'] creation, superintended the process by initially selecting and ultimately approving the compositions to be recorded, approved the musicians involved in the recordings, and contracted with Mathieson." But, according to the district court, that financing, approving, and contracting were not independently copyrightable, so the recording company's "contributions could not have made the company into an author under copyright law independent of the work of its agents, like Mathieson, who did make copyrightable contributions." The court concluded that "Mathieson's work as the hired music producer, not [the company]'s business activities as the record label, is the relevant locus of authorship analysis." Stillwater does not meaningfully dispute this conclusion. Accordingly, we do not consider the company's activities and focus our analysis on Mathieson's contributions.

company. But the producer agreements are between the recording company and Mathieson, and not between the alleged coauthors here—that is, Basilotta and Mathieson. They are therefore not evidence of any understanding between Basilotta and Mathieson. In addition, it is telling here that Stillwater's *own witness*, the head of the recording company, testified that the notion of "joint authors" never crossed his mind when he signed Basilotta as a recording artist.

  The third factor, whether "the audience appeal of the work" can be attributed to both alleged authors, *id.* at 1234, and whether "the share of each in its success cannot be appraised," *id.* (quoting *Jerry Vogel Music Co.*, 140 F.2d at 267), weighs against Stillwater as well. Stillwater's own evidence suggests that the "audience appeal" of the recordings was predicated more on Basilotta's performance than on anyone else's. The head of the recording company testified that he signed Basilotta because he wanted to produce albums with music videos and not just recordings, and that Basilotta had unique audio-visual creativity. Consistent with that vision, Basilotta's first record album was turned into a music video album as well, with Basilotta directing the visual component of the music videos. Although authorship of the music video album is not disputed here, the emphasis on visuals suggests that audience appeal of the record album was likely tied to Basilotta's performance in the accompanying videos. And, as Stillwater acknowledges, the failure of Basilotta's second and final album was largely attributed to her

performance rather than to Mathieson's, indicating that the work was judged on how well Basilotta performed.

Stillwater makes one final argument, but it also fails. According to Stillwater, the relationship between a producer and performer of a sound recording is a traditional form of collaboration in which the producer is generally considered a joint author so long as the producer completes his or her traditional duties. And, on Stillwater's view, because Mathieson performed all the responsibilities typically undertaken by a producer, he should be considered a joint author. But even assuming that there should be some presumption of joint authorship for traditional producers, Stillwater has not shown that Mathieson is entitled to any such presumption. Stillwater neither produced expert testimony detailing the traditional duties of producers nor demonstrated that Mathieson performed such duties. Instead, Stillwater pointed to various sources that speak about traditional producers without establishing the contours of that role. Stillwater presented testimony only that, according to the head of the recording company—who only occasionally came to recording sessions, and who was not offered as an expert—Mathieson "carr[ied] out the duties of a record producer." And because it is undisputed that Mathieson was an inexperienced producer, to the extent that there is some traditional role of a producer, there is less reason to think that Mathieson comported with that role than there would be for an experienced producer.

Accordingly, Stillwater has not adequately shown that Mathieson is entitled to any sort of presumption of joint authorship.[3]

Because we conclude that Stillwater has failed to prove that Mathieson is a co-author under the three factors discussed above, we do not reach Basilotta's other arguments pertaining to joint authorship or her statute-of-limitations argument.

AFFIRMED.

---

[3] Stillwater asserts that "the District Court found that Mathieson performed all the responsibilities typically undertaken by the producer of a sound recording." But that assertion misstates the record. The district court only found that, *according to the head of the recording company*, Mathieson performed those responsibilities. And the court specifically noted that the company's head only "occasionally" observed Mathieson, and that he was not the most credible witness.